IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THOMAS GARNER and CAMMI GARNER,<br><br>    Plaintiffs,<br><br>v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>    Defendant. | **ORDER AND MEMORANDUM DECISION DENYING MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00378-TC-DAO |

Before the court is Defendant The Cincinnati Insurance Company's (Cincinnati Insurance) Motion to Dismiss.  (ECF No. 20.)  For the reasons stated below, the court denies that motion.

**FACTUAL BACKGROUND**

This insurance coverage dispute arises out of a car accident.  Plaintiffs Thomas Garner and his wife Cammi Garner challenge Cincinnati Insurance's denial of coverage under the umbrella insurance policy held by Mr. Garner's employer (the Policy, ECF No. 20-1), bringing claims for breach of contract and breach of the duty of good faith and fair dealing.  The Policy contains a Utah Underinsured Motorist Insurance (UIM) provision (the UIM Endorsement), which the Garners argue makes Mr. Garner an "insured."  (Policy at 57–62.)  Consistent with its denial of coverage, Cincinnati Insurance maintains that Mr. Garner is not entitled to UIM

1

coverage under the Policy because the car he drove in the accident was not a "covered auto" as the term is defined in the Policy.  Cincinnati Insurance's motion to dismiss turns on the meaning and scope of the UIM Endorsement.

### I.     The Accident

Mr. Garner was a traveling nurse employed by Advanced Health Care Corporation (AHCC) (Am. Compl., ECF No. 17 at ¶ 5), a healthcare company which provides clinical and rehabilitative care for patients recovering after hospitalization.[1]  His job responsibilities included traveling back and forth to different healthcare centers in his own car to treat patients.  On November 18, 2021, Mr. Garner was driving his Chevrolet Trailblazer on I-15 in Lehi, Utah when another driver, Michael Haws, rear-ended him, totaling Mr. Garner's car.  (Id. ¶¶ 6–10.) Mr. Garner was hospitalized for several months and has incurred at least $1.3 million in medical bills.  (Id. ¶¶ 5–12.)  As a result of Mr. Garner's extensive injuries, Mrs. Garner now bears a significant burden providing home care for her husband.  (Id. ¶¶ 10–13, 14, 25.)

Mr. Haw, a non-party to this lawsuit who was undisputedly at fault in the November 2021 accident, had insurance with a one-million-dollar damage limit.  (Id. ¶¶ 12, 15.)  While Mr. Garner received some additional workers' compensation benefits from AHCC along with Mr. Haw's limited coverage, these two recoveries combined still fall short of the total damages he has suffered and will suffer going forward, including costs related to his future care, lost wages, and pain and suffering.  (Id. ¶ 14.)

Consequently, Mr. Garner filed a UIM coverage claim with Cincinnati Insurance, his employer's insurance company, which Cincinnati Insurance denied on February 25, 2022.  (Id. ¶¶ 17, 26; Denial of Coverage Letter, ECF No. 20-2.)  The Denial of Coverage Letter stated

---

[1] See AHCC Website, available at: https://www.ahcfacilities.com/ (last visited Feb. 10, 2025).

Cincinnati Insurance's position that "there is no coverage for the potential [UIM] claim of Mr. Garner" because "the policy issued to the insured Advanced Health Care does not list the vehicle owned by Mr. Garner that was involved in the accident as a scheduled auto." (ECF No. 20-2 at 4.) In other words, Cincinnati Insurance denied coverage because the accident occurred in Mr. Garner's own car, and not AHCC's.

## II.     The Relevant Insurance Policy Language

As relevant here, Cincinnati Insurance's Policy with AHCC consists of: 1) the Common Policy Declarations; 2) the Automobile Schedule, identifying the vehicles specifically covered in certain parts of the Policy; 3) the Utah UIM Endorsement, discussing the coverage conditions and limitations for the insured when involved in an accident with a third-party, underinsured motorist; 4) the Business Auto Coverage Form (BACF), discussing overall coverage liability; and 5) the Business Auto Coverage Part Declaration (BACPD), detailing the scope of the BACF. (See Policy at 1, 12, 15–23, 33, 57.)

### A.  The Common Policy Declarations

The first page of the Policy lists identifying details of the overarching umbrella policy, including the identity of the "Named Insured." (Id. at 1.) Specifically, the Common Policy Declarations state that AHCC, an entity, is the Named Insured. (Id.) The Policy then supplements the list with several additional related entities, including the AHC of Mesa LLC, AHC of Scottsdale LLC, and others. (Id. at 3.) The parties agree Mr. Garner is not a Named Insured under the Common Policy Declarations or the supplement. (Id.)

### B.  The Automobile Schedule

The Policy provides general liability insurance for several dozen cars, which are listed in the "Automobile Schedule" and identified by their year, make, model, zip code, and value. (Id.

at 15–23.)  The parties agree that Mr. Garner's personal vehicle, the 2021 Chevrolet Trailblazer involved in the accident, is not listed in the Automobile Schedule.  (<u>Id.</u>; Am. Compl. ¶ 6; ECF No. 20 at 2, 6.)

### C.  UIM Endorsement

"Underinsured motorist coverage is a facet of uninsured motorist coverage; its purpose is to provide insurance protection to the insured against damages caused by a negligent motorist as if the motorist had another liability policy in the amount of the underinsured policy." <u>U.S. Fid. & Guar. Co. v. Sandt</u>, 854 P.2d 519, 521 (Utah 1993).  The Garners argue that the Policy's Utah UIM Endorsement covers Mr. Garner for the damages incurred beyond Mr. Haw's insurance policy's limits.  (Policy at 57–62.)

The main body of the UIM Endorsement contains six sections describing: A) the Coverage; B) Who Is an Insured; C) Exclusions; D) Limit of Insurance; E) Changes in Conditions; and F) Additional Definitions.  (Policy at 57–62.)  Section A on Coverage requires that Cincinnati Insurance: "pay all sums the 'insured' is legally entitled to recover" which "must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.'"  (<u>Id.</u> at 57, § A.)

Section B defines "Who Is an Insured;" or, in other words, to whom Cincinnati Insurance must provide UIM coverage.  (<u>Id.</u>)  The first scenario outlined in Section B extends UIM coverage where a "person[]," rather than a business entity, is identified as the Named Insured in the Common Policy Declaration.  (<u>Id.</u> at 57–58, § B.1.)  In that scenario, Cincinnati Insurance's UIM coverage applies to, among others, a) the Named Insured, b) the Named Insured's family members, and c) any individuals driving any "covered autos" under the policy.  (<u>Id.</u>)  Section B.1.b does not specify whether the Named Insured individual and his or her family members need to be in a "covered auto" for UIM coverage to apply.

4

The second scenario, Section B.2, extends coverage in circumstances where an "entity," not a person, is the Named Insured on the Policy. (Id. at 58, § B.2.) Under Section B.2.a, UIM coverage extends to any individual injured in a covered auto, as defined in the Policy, or a "temporary substitute" for a covered auto. (Id.)

Finally, the third scenario, Section B.3, extends UIM coverage to the following:

> Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown on this endorsement.

(Id. at 58, § B.3.) The third scenario, unlike Section B.2.a, does not specify whether the covered individual, the "Employee of the Named Insured," must drive a "covered auto" to qualify for UIM coverage. (Compare id., with id. at 58, § B.2.a.)

The UIM Endorsement begins with a short introduction, which states in all capital letters: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. The introduction provides that:

> For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Utah, this endorsement modifies insurance provided under the following:
>
>> Business Auto Coverage Form
>>
>> Garage Coverage Form
>
> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.
>
> This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

(Policy at 57.) Below the introductory sentence, there are two tables summarizing the UIM policy details outlined above and the maximum dollar amount of coverage, creating a visual break between the introduction and the body text (Sections A–F) of the UIM Endorsement. (Id.)

### D.  The Business Auto Coverage Form

The BACF is a standard form detailing the general commercial auto accident liability coverage that Cincinnati Insurance provides in the Liability Coverage Provision.  See Edens v. The Netherlands Ins. Co., 834 F.3d 1116, 1121 (10th Cir. 2016) (explaining, generally, the role of BACF forms).  The BACF provides that: "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations.  The words 'we,' 'us' and 'our' refer to the Company providing this insurance."  (Policy at 33.)

Section II of the BACF describes the Policy's general "Liability Coverage," which would be implicated, for example, in a standard car accident where the insured was at fault.  In the event of such an accident, Cincinnati Insurance agrees to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto.'"  (Id. at 34.)  Section II of the BACF contains its own definition of "Who Is an Insured" which differs from the definition of an "Insured" contained in the UIM Endorsement.  (Id.) Under the BACF, the following, among others, are "Insured," with the term "you" referring to AHCC and any other Named Insureds:

    a. You for any covered 'auto'.

    b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:

        1. The owner or anyone else from whom you hire or borrow a covered 'auto'.  This exception does not apply if the covered 'auto' is a 'trailer' connected to a covered 'auto' you own.

        2. Your 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household.

(Id.)  Accordingly, under the BACF provision's exceptions to the Insured, an employee hired to drive his or her own personal vehicle would not be covered.  Id.

Section I of the BACF is titled "Covered Autos" and describes which vehicles qualify as "covered 'autos'" where that term is used throughout the different types of coverage provided under the Policy.  (Id. at 33.)  The BACF provides nine different definitions for a "covered auto," marking each with a numerical symbol.  The BACF explains that where the numerical symbol #2 is assigned to a coverage type offered under the Policy, then the term "covered auto" refers to "OWNED 'AUTOS' ONLY," meaning:

> [o]nly those 'autos' [AHCC] own[s] (and for Liability Coverage any 'trailers' [AHCC] [does not] own while attached to power units [AHCC] own[s]).  This includes those 'autos' [AHCC] acquires ownership of after the policy begins.

(Id.)  By contrast, where symbol #9 is used, the term "covered auto" means "NONOWNED 'AUTOS' ONLY," or:

> [o]nly those 'autos' [AHCC] do[es] not own, lease, hire, rent or borrow that are used in connection with [AHCC's] business.  This includes 'autos' owned by [AHCC's] 'employees', partners (if [AHCC is] a partnership), members (if [AHCC is] a limited liability company), or members of their households but only while used in [AHCC's] business or [its] personal affairs.

(Id.)

### E.  The Business Auto Coverage Part Declarations

The BACPD provides an overview of the different types of insurance (the endorsements) included throughout the Policy, including distinct coverages for underinsured motorist accidents, personal injury protection, auto medical payments, and physical damage protection, among others.  (Id. at 12.)   The BACPD explains that "[e]ach of these "coverages will apply only to those 'autos' shown as covered 'autos'" as depicted "by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage."  (Id. at 12, 33.)  In other words, the BACPD provides the meaning of the term "covered auto" as it is used in the various types of insurance by assigning each type of insurance

one of the numerical symbols that are listed and defined in the BACF.  (Id. at 12.)  The BACPD assigns Symbol #2 to the term "covered auto" as it is used in the UIM Endorsement.  (Id.)

### III.    The Present Motion to Dismiss

Cincinnati Insurance argues that the Policy is unambiguous that Mr. Garner is not insured by the Policy because he was driving his own car in the accident.  (ECF No. 20 at 6–9.)  In support, Cincinnati Insurance maintains that 1) the Policy's UIM Endorsement is bound by the BACF and BACPD, which limit coverage to employees driving cars named in the Policy's Auto Schedule, meaning those owned by AHCC; 2) the UIM Endorsement similarly limits coverage only to those employees driving "covered autos" owned by AHCC; and 3) extending UIM coverage to Mr. Garner is inconsistent with insurer obligations under the Utah statute governing UIM liability.  (Id.)  In the event the court finds the Policy's UIM coverage ambiguous and construes that ambiguity in favor of the Garners' coverage, Cincinnati Insurance argues that the Garners' breach of good faith and fair dealing claim must be dismissed because Cincinnati Insurance's decision to deny coverage was a reasonable interpretation of the Policy's applicability to Mr. Garner's situation.  (Id. at 10–11.)

In turn, the Garners argue that Cincinnati Insurance's interpretation of the Policy ignores the plain text of the UIM Endorsement, which extends coverage to employees driving their own vehicles so long as an employee was driving in the course and scope of his employment.  The Garners argue that the UIM provision's definition of the Insured, as it applies to employees driving in the course of employment, is separate from—and not limited by—the BACF and BACPD or the introductory sentence in the UIM Endorsement, and that the expansive coverage promised in Section B.3 of the UIM provision is consistent with the Utah statute governing UIM insurance.  (E.g., ECF No. 26 at 2, 4–12.)  In the alternative, the Garners argue that conflicting

8

language in the UIM and BACF makes the Policy ambiguous.  Utah law requires that such

ambiguities be construed against the insurer and in favor of coverage.  (Id. at 14–15.)  Finally,

the Garners argue that Cincinnati Insurance acted in bad faith by denying coverage, warranting

damages inclusive of attorney fees, mental and emotional pain and suffering, and loss of interest,

in addition to the costs of Mr. Garner's care.  (Id. at 16–18.)

## LEGAL STANDARD

"To survive a [Federal] Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must

allege sufficient facts 'to state a claim to relief that is plausible on its face.'"  Strauss v. Angie's

List, Inc., 951 F.3d 1263, 1266 (10th Cir. 2020) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  When a "plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged[,]" a claim is facially

plausible.  Id. at 1267 (citation omitted).  The court must "accept all well-pled factual allegations

as true and view these allegations in the light most favorable to the nonmoving party."  Id.

(citation omitted).

The interpretation of an insurance policy is a matter of law that the court can resolve in

the context of a motion to dismiss.  See, e.g., McAuliffe v. Vail Corp., 69 F.4th 1130, 1144 (10th

Cir. 2023); Best Rate Towing & Repair, Inc. v. Ziplocal, L.P., No. 2:11-cv-345-DAK, 2012 WL

627668, at *2 (D. Utah Feb. 24, 2012) ("When the terms of a contract are clear and

unambiguous, the court may interpret the contract and enter judgment as a matter of law.").

## ANALYSIS

### I.    Breach of Contract

Insurance policies must be "interpreted according to rules of contract interpretation."

Utah Farm Bureau Ins. Co. v. Crook, 980 P.2d 685, 686 (Utah 1999).  And "[w]hen jurisdiction

lies in a federal district court based on diversity, the court must apply the substantive law of the forum state," here Utah's laws, to interpret the contract's meaning.  PacifiCorp v. Jacobsen Constr. Co., Inc., No. 2:18-cv-00936-DAK, 2019 WL 2285920, at *3 (D. Utah May 29, 2019) (citing In re ZAGG, Inc. v. Pederson, 826 F.3d 1222, 1228 (10th Cir. 2016)).

The court will "first look at the plain language of the contract to determine the parties' meaning and intent."  Brady v. Park, 445 P.3d 395, 407 (Utah 2019) (cleaned up).  If the contract's language is unambiguous, "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."  Id. (citation omitted).  "Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole."  Id. at 686.  Therefore, the UIM Endorsement's terms must be "harmonized with the policy as a whole, and all provisions should be given effect if possible."  Id.; see also Encon Utah, LLC v. Fluor Ames Kraemer, LLC, 210 P.3d 263, 269 (Utah 2009) ("In interpreting a contract, we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless.").

An ambiguity may arise in an insurance contract "(1) because of vague or ambiguous language in a particular provision or (2) because two or more contract provisions, when read together, give rise to different or inconsistent meanings, even though each provision is clear when read alone."  Mellor v. Wasatch Crest Mut. Ins. Co., 201 P.3d 1004, 1008 (Utah 2009).  "Whether an ambiguity exists in an insurance contract is a question of law."  Id. (cleaned up).

Utah law recognizes additional protections for the insured on the basis that insurance contracts are "drafted by insurance companies and allow no opportunity for negotiation of the terms by the insured."  Id. at 1008.  Accordingly, ambiguous provisions in an insurance policy are "interpreted in favor of coverage."  Id.; see also Whitlock v. Old Am. Ins. Co., 442 P.2d 26,

28 (Utah 1968) ("We have heretofore held that the insured is entitled to the broadest coverage he could reasonably understand from the policy."); U.S. Fid. & Guar. Co., 854 P.2d at 521 ("The language of [the] ... underinsured motorist coverage is at best ambiguous and must be construed against [the insurer] and in favor of the insured.").

"If the state's highest court has not addressed [an interpretation] issue presented" by a specific contract, then "the federal court must determine what decision the state court would make if faced with the same facts and issue." Armijo v. Ex. Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988) (holding that, to predict what a state's highest court would do, federal courts should consider "state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority"). The Utah Supreme Court has not yet considered how to interpret the interplay between a UIM Endorsement and a BACF provision in this context, where the UIM Endorsement fails to expressly state that an employee driving in the scope of employment must be in a "covered auto" as that term is defined elsewhere in the policy. Accordingly, the court must predict how the Utah Supreme Court would answer this question if faced with similar facts, considering persuasive "state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." Id.

As explained below, the court finds that the clear and unambiguous language of the "Who Is an Insured" section of the UIM Endorsement, and its interplay with the greater umbrella policy, demonstrate the parties' intent to provide UIM coverage to AHCC's employees driving any car so long as they were injured while driving in the course of employment. The court's interpretation of the Policy is consistent with that of many other courts examining nearly identical insurance policies. See, e.g., Grinnell Mut. Reinsurance Co. v. Haight, 697 F.3d 582, 590 (7th Cir. 2012); Reisig v. Allstate Ins. Co., 645 N.W.2d 544 (Neb. 2002); Stoddard v.

Citizens Ins. Co. of Am., 643 N.W.2d 265 (Mich. Ct. App. 2002); Bushey v. N. Assurance Co. of Am., 362 Md. 626 (Md. Ct. App. 2001).

### A. Section B.3 of the UIM Provision

The court first examines Section B.3 of the UIM Endorsement, which defines the relevant subclass of "Insured" for UIM coverage. Specifically, Section B.3 provides UIM coverage to "Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured." (Policy at 58, § B.3.) Cincinnati Insurance does not dispute that Mr. Garner was AHCC's employee, that AHCC, an entity, is a Named Insured under the Policy, and that Mr. Garner was driving in the scope of his employment as a travelling nurse when he was hit by Mr. Haw. Nothing in the text of Section B.3 limits its coverage to those employees driving "covered autos." Accordingly, this provision's plain language dictates Mr. Garner is covered regardless of his ownership of the vehicle involved in the accident.

### B. The UIM and BACF's Definitions of the "Insured"

Cincinnati Insurance asks the court to ignore the definition of the "Insured" from Section B.3 of the UIM provision and restrict Mr. Garner's right to UIM coverage by importing limitations from the BACF and BACPD, arguing that these sections, when read together, require anyone seeking coverage to be in a "covered auto." (ECF No. 20 at 7–8.) But the court rejects this interpretation and finds that Section B.3 of the UIM policy is not modified (and therefore not bound in scope) by limitations on coverage listed in the BACF and BACPD.

Cincinnati Insurance's argument that the court should apply limitations from the BACF to the definition of the "Insured" in Section B.3 of the UIM Endorsement is belied by the fact that the definitions of an "Insured" in the BACF are meaningfully distinct from those in the UIM

Endorsement.  "To harmonize the provisions of a contract, [Utah Courts] examine the entire contract and all of its parts in relation to each other and give a reasonable construction of the contract as a whole to determine the parties' intent."  <u>Gillmor v. Macey</u>, 121 P.3d 57, 65 (Utah Ct. App. 2005).  Here, the BACF provision provides general commercial liability coverage when AHCC's employees are involved in car accidents, but explicitly states that those employees must have been driving a "covered 'auto'" that they or their family members do not personally own. (Policy at § A.1.b.2.)  By contrast, the UIM plainly provides coverage for a broader class of AHCC's employees by stating that the Named Insured's employees, like Mr. Garner, are "insureds" in the event of an accident if they were driving within the scope of their employment. (ECF No. 20-1 at 57–58.)  The difference between these two provisions' definitions of "Who Is an Insured" is material and has not been—presumably because it cannot be—explained by Cincinnati Insurance.  Cincinnati Insurance's choice to exclude the term "covered auto" in Section B.3 of the UIM Endorsement must be read as distinguishing the auto requirements for employees seeking coverage under the UIM Endorsement versus the BACF's general liability provision.

### C.  The UIM Endorsement

Cincinnati Insurance next contends that the UIM Endorsement's introductory sentence conditionally limits UIM coverage to accidents in "covered autos" for individuals in any of the qualifying UIM circumstances outlined in Sections B.1, B.2, and B.3.  (Def's Reply, ECF No. 30 at 4–5, 9–10.)  Specifically, Cincinnati Insurance asserts that since the UIM Endorsement begins with the sentence "for a covered auto … this endorsement modifies insurance provided under the following: Business Auto Coverage Form …," that sentence impliedly modifies everything that follows it in the body of the UIM provision.  But the court finds that Cincinnati

Insurance's interpretation is irrational because were that interpretive principle applied uniformly throughout the UIM Endorsement, it would 1) create redundancies, 2) render Section B.3 meaningless, and 3) defy commonsense grammatical conventions.

Reasonable interpretation of one contract provision will not create redundancies in other provisions.  Cincinnati Insurance argues that the court must apply the UIM Endorsement's introductory "for a covered auto" terminology to the UIM Endorsement's definitions of the Insured under Section B.  Applying this language, Section B.3 of the UIM would impliedly read: "For a covered auto, [t]he employee driving in the course and scope of his employment [is insured]."  But under this logic, the court must also examine what happens if it were to apply the "for a covered auto" language to the definition of an insured under Section B.2, which would read:  "For a covered auto, [a]ny natural person [is insured], but only for injuries that occur while 'occupying' an 'auto' for which coverage is provided in the coverage form or a temporary substitute for such covered 'auto.'"  The resulting double reference to the "covered auto" requirement raises red flags—indeed, Utah contract interpretation principles reject as unreasonable interpretations rendering another contractual term (here, Section B.2) redundant. See Fisher v. Davidhizar, 436 P.3d 123, 128 (Utah Ct. App. 2018).  Indeed, the court's rejection of Cincinnati Insurance's argument is consistent with the Supreme Court of South Dakota's persuasive holding extending UIM coverage in similar circumstances.  See Acuity v. Terra-Tek, LLC, 11 N.W.3d 96, 102 (S.D. 2024) (it would be "redundant" and therefore "problematic" for courts to "[g]raft[] the '[f]or a covered auto' phrase to the Who Is an Insured section" because had the insurer "intended UIM coverage to apply only to scenarios involving covered autos, it could have included limiting language similar to that contained in the Policy language on LIABILITY COVERAGE").  Cincinnati Insurance has not explained—presumably because it

cannot—why it employed the term "covered auto" in Section B.2 but not in Section B.3. Accordingly, it is far more reasonable for the court to hold that where the term "covered auto" is used, driving a "covered auto" is a pre-condition to coverage; and where that language is omitted, there is no such pre-condition to coverage.

Similarly, the court rejects Cincinnati Insurance's interpretation of the UIM Endorsement's introductory sentence because applying the "for a covered auto" language to Section B.3 would render the coverage provided by Section B.3 meaningless, subsumed by Section B.2.a. Namely, Section B.2.a of the UIM provision dictates that if an entity like AHCC is the Named Insured, then "[a]ny natural person" is an "Insured" regarding "injuries that occur while 'occupying' an 'auto' for which coverage is provided in the coverage form …" (ECF No. 20-1 at 58.) Accordingly, were Cincinnati Insurance's interpretation of Section B.3 correct— requiring employees be in a "covered auto" to qualify for coverage in any accident that occurred within the scope of their employment—then those employees could always seek UIM coverage under <u>both</u> Sections B.2.a and B.3.[2] This interpretation renders Section B.3 of the UIM Provision moot and section B.2 superfluous. Accordingly, the court must ask: Why would the Policy single out employees of the Named Insured for additional coverage duplicative of what they would receive under Section B.2.a? Cincinnati Insurance's argument is flawed because it contradicts Utah law requiring that "all provisions [] be given effect if possible." <u>Utah Farm Bureau Ins. Co.</u>, 980 P.2d 685; <u>UDAK Properties LLC v. Canyon Creek Com. Ctr. LLC</u>, 482

---

[2] In its Reply, Cincinnati Insurance argues that Section B.2 does not extend UIM coverage to employees occupying a covered auto because Section 2.A of the UIM applies only to "situations in which an automobile is considered a 'temporarily' covered auto, pursuant to a breakdown of an existing auto." (ECF No. 30 at 10, Def's. Reply.) But Section 2.A of the UIM provision plainly extends coverage where a natural person is occupying <u>either</u> an auto provided for in the Automobile Schedule <u>or</u> occupying a temporarily covered auto. (<u>See</u> Policy at 57.)

P.3d 841 (similar); <u>see, e.g.</u>, <u>Stoddard</u>, 643 N.W.2d at 267 (finding that an interpretation that provided UIM coverage for an individual who was not in a "covered auto" was the only way to avoid rendering another section of the insurance policy redundant).

The Seventh Circuit has examined a nearly identical umbrella policy, UIM Endorsement, and UIM provision, and extended coverage to a similarly-situated individual, the family member of a named insured.  <u>See</u> <u>Grinnell Mut. Reinsurance Co. v. Haight,</u> 697 F.3d at 587.  Ms. Haight's father purchased a UIM policy that defined "the insured" as the "Named Insured and any [of his] family members" or, in the alternative, "[a]nyone else occupying a covered auto or a temporary substitute for a covered auto."  <u>Id.</u> at 586.  The UIM provision therefore provided family members of the named insured with UIM coverage but did not specify whether those family members must be in a "covered auto" to obtain coverage for their accident.  The Seventh Circuit rejected Grinnell's argument that Ms. Haight was not covered under that UIM policy, reasoning that the plain text of the UIM policy did not require family members be in "covered autos" to qualify.  <u>Id.</u> at 587–88.  The Seventh Circuit noted that by extending coverage in other situations to "anyone else" only if they were "occupying a covered auto," the insurer plainly intended to distinguish family members driving <u>any</u> car from those individuals who were required to be in a "covered auto" to make a UIM claim.  <u>Id.</u> at 588.  The Seventh Circuit also noted that Grinnell's interpretation, like Cincinnati Insurance's, would render the UIM Endorsement's distinct definitions of the "insured" meaningless, which would be an "odd result."  <u>Id.</u> at 589.

This case is highly persuasive.  Like in <u>Grinnell Mut. Reinsurance Co. v. Haight</u>, Cincinnati Insurance drafted the Policy and therefore could have easily inserted language limiting Section B.3's application only to AHCC's employees driving "covered autos" within the

16

scope of their employment, as it chose to include in Section B.2.[3]  But Cincinnati Insurance, like Grinnell, did not.  Cincinnati Insurance's references to a "covered auto" in some portions of the UIM Endorsement but not others must be given meaning and cannot be dismissed as oversight or inadvertence.

Cincinnati Insurance attempts to distinguish Grinnell Mut. Reinsurance Co. v. Haight on the basis that the plaintiff seeking coverage in that case, Ms. Haight, was a family member of the insured, rather than an employee.  (See ECF No. 30 at 6–7.)  But this court sees no meaningful distinction between a policy covering accidents for family members of an individual named insured without regard to the vehicle driven, and a policy covering employees of a corporate Named Insured without regard to the vehicle driven.  In any event, the court notes that public policy considerations justify extending UIM coverage to an employee of an insured corporation regardless of the vehicle's ownership, given that a corporation cannot itself drive or receive UIM coverage.  Employees driving in the scope of employment, as representatives of the corporation they work for, are reasonably viewed as extensions or representatives of the Named Insured company that purchased the Policy in the same way that Ms. Haight was viewed as an extension of her father, who had purchased the policy to benefit his family.[4]

Further, as the Seventh Circuit noted when examining the near-identical UIM Endorsement in Grinnell Mut. Reinsurance Co. v. Haight, Cincinnati Insurance's argument that

---

[3] The insurer in Grinnell Mut. Reinsurance Co. v. Haight countered that by including the words "For a covered auto" at the top of the UIM's endorsement, "there was no need to add them again" in the section describing coverage for the family members of the named insured.  The Seventh Circuit rejected this argument, explaining that the use of covered auto in some but not all parts of the definition of the Insured negated the insurer's interpretation, and reiterated its finding that the UIM's introductory sentence did not modify the entire UIM endorsement.  697 F.3d at 588–89.

[4] Further, the court sees no relevance in Cincinnati Insurance's attempt to distinguish Grinnell Mut. Reinsurance Co. v. Haight on the basis that Haight was at fault in the accident.

the introductory sentence in the UIM Endorsement modifies and limits the definition of the Insured in Section B "is strained both as a matter of grammar and of logic." 697 F.3d at 589. For one, as the Seventh Circuit recognized, grammar rules logically dictate that the prepositional phrase "for a covered auto," as used in the introductory sentence, modifies just "words within the same sentence."[5] Id. As a result, the Seventh Circuit in Grinnell Mut. Reinsurance Co. v. Haight determined that the phrase "for a covered auto" modified the BACF, which was mentioned as an object of the prepositional phrase, but did not modify the definition of the "Insured" contained in later sections of the UIM Endorsement. Id.; see also Carpenter v. Grinnell Mut. Reinsurance Co., 430 F. Supp. 3d 625, 634–35 (D.N.D. 2019) (finding that an identical introductory sentence in insurance company's North Dakota uninsured motorist endorsement did not modify the plain language of a subsequent section defining "Who Is an Insured"). The Seventh Circuit in Grinnell Mut. Reinsurance Co. v. Haight further justified its grammatical construction by relying on the fact that the prepositional sentence containing the phrase "for a covered auto" in the Grinnell UIM Endorsement was "visually and structurally separated" from the description of "Who Is an Insured" by two tables containing additional information about the coverage. See 697 F.3d at 588–89. So too here, the visual separation

---

[5] The UIM Endorsement's introductory sentence states:

> For a covered "auto" licensed or principally garaged in, or "garaged operations" conducted in Utah, this endorsement modifies insurance provided under the following:
>
> BUSINESS AUTO COVERAGE FORM
>
> GARAGE COVERAGE FORM

(Policy at 57.)  The UIM endorsement sentence at issue in the Grinnell Mut. Reinsurance Co. v. Haight is, in essence, identical, substituting "Illinois" for "Utah" and adding "MOTOR CARRIER COVERAGE FORM" and "TRUCKERS COVERAGE FORM" to the coverage list.  697 F.3d at 588 n.1.

between these sections further supports the court's conclusion that the drafter, Cincinnati Insurance, could not have reasonably intended that the introductory sentence to the UIM Endorsement would modify everything that followed several paragraphs below.  (See Policy at 57–58.)

Cincinnati Insurance urges the court to disregard the Seventh Circuit's logic in Grinnell Mut. Reinsurance Co. v. Haight and instead follow the reasoning in Maher v. United Ohio Ins. Co., a decision by an Ohio appeals court applying Ohio law to deny UIM coverage.  (ECF No. 30 at 8–9 (citing 188 N.E.3d 212, 214 (Ohio App. 2022)).)  But neither Utah nor Tenth Circuit courts have adopted the Ohio Appeals Court's holding in Maher, meaning it is not binding on this court's interpretation of the Policy.  And the court finds the Ohio Appeals Court's reasoning in Maher unpersuasive and distinguishable, particularly in light of the wealth of case law going the other way.  In Maher, the Ohio Appeals Court noted that the definition of the "insured" in the UIM provision was "the Named Insured," a term which was defined only in the BACF provision as "You for any covered Auto."  Id. at 222.[6]  By contrast, as discussed above, Cincinnati Insurance's UIM Endorsement and BACF provision contain inconsistent definitions of "Who Is an Insured" which must be given force and effect.[7]  Mr. Garner's case is therefore far more analogous to the circumstances in Grinnell Mut. Reinsurance Co. v. Haight.

Indeed, taking into account the differences between a BACF's and UIM's definitions of "Who Is an Insured," at least one other state court has recognized that the Ohio Appeals Court's

---

[6] For the same reason, Cincinnati Insurance's reliance on Kirkwood v. Motorist Ins. Co. and Lisowski v. Hastings Mutual Ins. Co. is unpersuasive.  (See ECF No. 30 at 8 n.23 (citing Kirkwood, 2012 WL 3777026 (2012 Ohio App. Aug. 31, 2012)); Id. at 7 (citing Lisowski, 315 Wis. 2d 388 (Wis. 2009)).)

[7] Indeed, the Tenth Circuit has recognized, in applying Oklahoma law, that "[b]ecause the Business Auto Coverage Form never provides [UIM] coverage," the UIM "coverage is independent from the Policy's liability coverage."  Edens, 834 F.3d at 1121 n.2.

denial of coverage in <u>Maher</u> creates unjustified redundancies in the interpretation of a UIM Endorsement.  <u>See</u> <u>Grandpre v. Am. Mod. Home Ins. Co.</u>, 2023 WL 4573052, at *7 (Conn. Sup. Ct. July 10, 2023) (extending UIM coverage for the insured, despite the insurer's reliance on <u>Maher</u>, because "the greater weight of out of state authority" supports a finding that introductory language cannot limit the body text of the UIM provision to create redundancies) (citing <u>Bushey</u>, 766 A.2d at 598 (rejecting the insurer's argument that the uninsured motorist endorsement restricted coverage to only those instances involving a "covered auto," and emphasizing that "the references to covered autos in the general structure of the policy on which [the insurer] relies at best create an ambiguity"); <u>Haberman v. Hartford Ins. Group</u>, 443 F.3d 1257, 1268 (10th Cir. 2006) (applying Oklahoma law to extend coverage because the UIM endorsement "did not expressly limit [Haberman's] [UIM] coverage to only 'covered' vehicles"); <u>Reisig</u>, 645 N.W.2d at 544 (holding that policy with analogous BACPF, BACF, and UIM provisions was ambiguous on whether UIM coverage was limited to certain "covered autos" under Nebraska law and construing this ambiguity in favor of coverage for the insured)).  The court is persuaded that Utah courts would adopt the greater weight of caselaw outside the Ohio Court of Appeals requiring UIM coverage for individuals in circumstances similar to Mr. Garner's.  <u>Acuity</u>, 11 N.W.3d at 102 (extending coverage because had the insurer "intended UIM coverage to apply only to scenarios involving covered autos, it could have included limiting language similar to that contained in the Policy language on LIABILITY COVERAGE."); <u>Stoddard</u>, 643 N.W.2d at 269–70 (holding that UIM endorsement "unambiguously provide[d] coverage in circumstances beyond those involving ... covered auto[s]," despite language to the contrary in the policy's Schedule of Coverages and Covered Autos list); <u>Porter v. Buck</u>, 137 F. Supp. 3d 890, 899–900

20

(W.D. Va. 2015) (finding UIM Endorsement and therefore coverage was not expressly limited to accidents involving "covered autos" only).

Further, courts in the Tenth Circuit have also denied injured drivers' demands for UIM coverage for reasons that are consistent with the court's logic here.  For example, in <u>Federated Mut. Ins. Co. v. Enright</u>, the United States District Court for the District of Colorado declined to extend UIM coverage to a driver injured in his personal vehicle because the UIM provision at issue specifically noted that coverage applied only to persons "'occupying' or using a covered 'auto' or a temporary substitute for a covered 'auto.'"  2016 WL 1059467, at *7 (D. Colo. Mar. 17, 2016).  Similarly, in <u>Edens</u>, the Tenth Circuit found the plaintiff was not insured under his Oklahoma UIM Endorsement because the endorsement clearly specified that the "Insured" need be in a "covered auto" in all circumstances.  834 F.3d at 1122.  And in <u>Carpenter</u>, the United States District Court for the District of North Dakota declined UIM coverage based on the policy's "covered auto" requirements but noted that the injured person's use of a "covered auto" is not "required for coverage to exist" if the individual's use of a covered auto was not expressly mentioned in a policy endorsement's definition of the insured.  430 F. Supp. 3d at 634–35. These cases in which courts declined UIM coverage involve policies with materially different UIM qualifications.

In sum, the UIM Endorsement here does not, as Cincinnati Insurance argues, narrow the scope of Section B.3's coverage based on the ownership of the vehicle driven in the accident.  As the drafter, Cincinnati Insurance's chosen language evinces its intent to make driving a "covered auto" a precondition to coverage in some situations but not others, like here.  As a matter of law, the UIM Endorsement covers Mr. Garner's injuries.

### D.  The BACPD's Definition of "Covered Autos" as Used in the UIM Provision

Cincinnati Insurance next argues that the UIM Endorsement must be read in light of the numerical symbols outlined in the BACF and BACPD, which together indicate which vehicles are "covered autos" across the different types of insurance offered in the Policy.  (See ECF No. 20 at 8 (citing Policy at 12, 33).)  In other words, Cincinnati Insurance argues that because the BACPD, in the context of the UIM provision, defines "covered autos" as "OWNED AUTOS," then UIM coverage as a whole applies only to accidents in vehicles identified in the Automobile Schedule and/or owned by AHCC.  But as explained above, the UIM is clear and unambiguous that employees are not required to be in a "covered auto" to qualify for UIM coverage if they, like Mr. Garner, are driving within the scope of their employment.  Accordingly, cross-referencing the definition of the "covered auto" contained in the BACF and BACPD is irrelevant and unnecessary for those claiming coverage under Section B.3 of the UIM Endorsement.  Under the same logic, the Seventh Circuit has ignored these exact BACF and BACPD symbol designations when examining UIM coverage limits for someone who was an "insured" regardless of the vehicle driven in an accident, holding that "the fact that the Business Auto Coverage Form only deems 'insureds' for liability coverage to be persons who occupy covered autos does not change our analysis" because "[t]he UIM endorsement has its own provision defining who the insured are for its purposes." Grinnell Mut. Reinsurance Co. v. Haight, 697 F.3d at 589.

In sum, the court's holding harmonizes the BACF and BACPD on the one hand, and the UIM Endorsement on the other, and does not create ambiguity about Mr. Garner's coverage.  The BACPD's designation of numerical symbols still comes into play for some "Insured" people under the UIM Endorsement, namely those whom the Policy requires drive a "covered auto" to

qualify for coverage.  (E.g., Policy at 57–58, § B.2.A.)  For those individuals—but not for Mr. Garner—it is both relevant and necessary to cross-reference the BACPD's definition of "covered autos."

Finally, the court notes that even were there an ambiguity about the interplay between the BACF and BACPD numerical symbol designations and the UIM Endorsement, the court's conclusion that Mr. Garner is covered would not change because Utah law requires that courts construe these ambiguities against the insurer, in favor of coverage.  See Mellor, 201 P.3d at 1009.

### E.  Public Policy and the Utah Underinsured Motorist Code

Alternatively, Cincinnati Insurance argues that the Garners' interpretation of the Policy is incorrect because the Policy's coverage would, as a result, exceed the Utah Code's statutory requirements for UIM coverage.  (ECF No. 20 at 8 (citing Utah Code Ann. § 31A-22-305.3) (Section 305.3).)  Cincinnati Insurance contends that Section 305.3 of the Utah Code sets the upper limit on UIM benefits, meaning the Policy cannot be reasonably interpreted to provide excess coverage.  (Id.)  The court rejects this argument as inconsistent with the legislative intent in passing Section 305.3.

The Utah underinsured motorist coverage statute "provides coverage for a covered person who is legally entitled to recover damages from an owner or operator of an underinsured motor vehicle because of bodily injury, sickness, disease, or death."  Utah Code Ann. § 31A-22-305.3(2)(a) (emphasis added).  Section 305.3 defines the term "covered person" as including "any person occupying or using a motor vehicle: (i) referred to in the policy; or (ii) owned by a self-insured.  Utah Code Ann. § 31A-22-305.3 (referencing the definition of a "covered person" under § 31A-22-305).

Section 305.3's legislative history, as summarized by the Utah courts, demonstrates that Utah passed the uninsured and underinsured motorist statutes "in response to an urgent concern that citizens of the state did not understand the consequences of not carrying uninsured or underinsured motorist coverage." Kingston v. State Farm Auto. Ins. Co., 344 P.3d 167, 171 (Utah Ct. App. 2015). Additionally, legislators have recognized how confusing coverage can be for the insured to navigate. Utah courts have therefore required that UIM provisions "be liberally construed in favor of coverage, with strict and narrow construction given to exclusions" because Section 305 of the Code was "adopted to benefit the insured motorist, and [was] not intended to relieve ... insurers of primary responsibility ... or to benefit them in any way." Gen. Sec. Indem. Co. of Arizona v. Tipton, 158 P.3d 1121, 1125 (Utah Ct. App. 2007) (cleaned up) (citing Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 122:10–11 (3d ed. 2005)). The statute itself does not bar insurance companies from providing benefits greater than the bare minimum required under Utah law—nor does the statute bar courts from enforcing the policy as written. Utah Code Ann. § 31A-22-305.3. For this reason, in a case arising under similar circumstances, the Utah Supreme Court has recognized that Section 305.3 sets the floor, rather than the ceiling, on the UIM coverage that auto insurers must provide.

In Dircks v. The Travelers Indem. Co. of Am., an employee of a "named insured" filed suit against Travelers Indemnity, his employer's insurer, seeking UIM coverage for injuries sustained in an auto accident while he was travelling in the course of employment as a passenger in his coworker's car. 416 P.3d 376, 380 (Utah 2017). Travelers Indemnity denied him UIM coverage, arguing that Mr. Dircks's request for coverage was inconsistent with the Utah Code's statutory requirements, which obligated insurers to provide UIM protection for only those cars named in the policy. Id. at 378–79 (Travelers argues "that section 305.3 does not apply to

24

vehicles that [Dircks's employer] had no statutory obligation to insure (like those not owned by [his employer])."). The Utah Supreme Court held that Mr. Dircks's coverage claim was consistent with Section 305.3 because the Utah Code was passed to broaden UIM coverage and foster reasonable reliance in the insured. See id. ("Even sophisticated consumers are at the mercy of insurance providers. And these consumers—like insurance companies themselves—are entitled to a fair construction of our statutory scheme."). Accordingly, the Utah Supreme Court recognized that UIM policies can be interpreted as providing broader coverage than the Section 305.3 baseline because "Section 305.3 sweeps broadly." Id.; see also Samuel Willison, 16 Williston on Contracts, § 49:35 (2024) (describing state UIM provisions as setting "the minimally mandated coverage"). Similarly, extending UIM coverage to Mr. Garner is consistent with and furthers the purpose of Section 305.3 of the Utah Code. Had Cincinnati Insurance sought to provide the bare minimum statutory UIM coverage, then it should have specified that those seeking coverage under Section B.3 must occupy a "covered auto."

The Garners' interpretation of the UIM Endorsement is also consistent with the plain text and scope of Section 305.3 because the statute, as the Utah Supreme Court noted in Dircks, "regulates underinsured motorist coverage for any vehicle 'referred to in the policy.'" 416 P.3d at 381 (citing Utah Code Ann. § 31A-22-305.3). In determining whether a vehicle had been "referred to in the policy" to qualify as a covered vehicle, the Utah Supreme Court in Dircks included any vehicles that had been mentioned throughout the entire umbrella policy—and not just those vehicles that are listed in the Policy's Automobile Schedule by identifying features, like the make, model, or owner. See id. ("For that reason we conclude that section 305.3 applies to the entire insurance document understood as a 'policy' even if some of the provisions in the policy were not themselves purchased to satisfy the insured's statutory security requirement.").

As discussed above, vehicles unowned by AHHC, like Mr. Garner's Chevrolet Trailblazer, were "referred to in the [Cincinnati Insurance] policy." Id. Indeed, accidents involving vehicles not owned by AHCC, but driven while in the course of AHCC's employment, are referred to in the policy at Section B.3 of the UIM provision—by virtue of Section B.3's omission of the "covered auto" requirement for employees seeking coverage. (Policy at 57–58.) Likewise, other areas of the umbrella policy contemplate coverage for autos neither owned by AHCC nor included in the Automobile Schedule. (See Policy at 33 (discussing "NONOWNED 'AUTOS,'" meaning those the Named Insured "do[es] not own, lease, hire, rent or borrow that are used in connection with [its] business").)."

In sum, the court's extension of underinsured motorist coverage to Mr. Garner's vehicle is consistent with the Policy and the Utah Code's regulation of UIM coverage. For the above reasons, the court denies Cincinnati Insurance's motion to dismiss the Garners' breach of contract claim.

## II.    Breach of the Duty of Good Faith and Fair Dealing

While an obligation of good faith and fair dealing is implied in every contract, Utah courts hold insurers to higher standards, permitting the insured party to seek additional damages, like attorney's fees, upon a finding that a denial of coverage was made in "bad faith." See, e.g., Lieber v. ITT Hartford Ins. Ctr. Inc., 15 P.3d 1030, 1037 (Utah 2000) (plaintiffs must show insurer's bad faith to recover attorney's fees related to a breach of contract); Barnett v. State Farm Mut. Auto. Ins. Co., No. 1:24-CV-86, 2024 WL 3510311, at *2 (D. Utah July 23, 2024) (requiring insurers act in good faith when evaluating coverage decision); Baker v. Progressive Ins. Co., 2:21-CV-307-JCB, 2023 WL 3044954, at *5 (D. Utah Apr. 21, 2023) (same).

Cincinnati Insurance first argues that the Garners' breach of the duty of good faith and fair dealing claim must be dismissed on the basis that it did not breach the Policy, in bad faith or otherwise, because the Policy excludes coverage for Mr. Garner's accident. (ECF No. 20 at 10.) But because the court finds that Mr. Garner is covered by the UIM Endorsement, the court rejects this basis for dismissing the Garners' claim.

In the alternative, Cincinnati Insurance argues that the Garners do not adequately state a claim that its coverage determination was made in "bad faith" because its interpretation of the Policy coverage was reasonable or "fairly debatable." See Lund v. Truck Ins. Exch., 494 P.3d 1045, 1052 (Utah 2021) ("If a claim brought by an insured against an insurer is fairly debatable, [then] failure to comply with the insured's demands cannot form the basis of bad faith.") (citations omitted). In other words, insurance companies are not liable for acting in "bad faith" just because they were wrong about their coverage decision. Utah courts find that "[a]n insured's claim is fairly debatable as a matter of law when the evidence creates a legitimate factual issue as to the validity of an insured's claim for benefits." Barnett, 2024 WL 3510311, at *2; see also Eldredge v. State Farm Mut. Auto. Ins. Co., No. 2:12-CV-900-DAK, 2014 WL 1875663, at *6 (D. Utah May 9, 2014). In examining whether an insurer's decision was "fairly debatable," Utah courts consider the circumstances surrounding the insurer's determination, including the "(1) standards of the insurance industry, (2) [Defendant's] interpretation of its own policy language, (3) [Defendant's] practices and procedures, and (4) other evidence of [Defendant's] internal policies and programs." Saleh v. Farmers Ins. Exch., 133 P.3d 428, 434–35 (Utah 2006). Generally, "an insurance company may reasonably and fairly rely, at least initially, upon a coverage opinion from qualified outside counsel, received in the course of careful investigation and evaluation of a claim." Fire Ins. Exch. v. Oltmanns, 370 P.3d 566, 569

(Utah Ct. App. 2016), aff'd, 2017 WL 5623415 (Utah Nov. 21, 2017). "At the motion to dismiss stage ... it is not for the Court to decide whether [the insurer's] conduct was reasonable as a matter of law ….  Instead, the Court must determine whether the facts alleged in the Complaint are sufficient to plausibly state a claim for bad faith."  Barnett, 2024 WL 3510311, at *2.

The court finds that the Garners have adequately stated a claim that Cincinnati Insurance's interpretation of the contract and parallel denial of coverage were made in bad faith because, as discussed above, Cincinnati Insurance's misinterpretation of the Policy, seeking to avoid coverage, contradicts the Policy's plain meaning and the bulk of the caselaw examining UIM coverage disputes.  E.g., Billings v. Union Bankers Ins. Co., 918 P.2d 461, 466 (Utah 1996) (holding that because the court had not determined that an insurance policy was ambiguous, there might be merit to the insured party's assertion that the insurance company was liable for breaching the implied covenant of good faith and fair dealing).  The Garners' claim for breach of the duty of good faith and fair dealing therefore survives dismissal.

In any event, while an insurer's misinterpretation of an unambiguous Policy may be sufficient to state a claim of bad faith, a jury is likely to demand more evidence of Cincinnati Insurance's bad faith to overcome the "fairly debatable" defense.  E.g., Barnett, 2024 WL 3510311, at *2 ("[I]t is not appropriate for the court to determine whether the fairly debatable defense applies [on a motion to dismiss].").  Indeed, Cincinnati Insurance's defense will likely implicate factual questions requiring discovery that are better examined at summary judgment or trial—for example, whether it consulted with outside, neutral counsel on the meaning of the UIM Endorsement before denying Mr. Garner's claim.  E.g., Billings, 918 P.2d at 464 (affirming jury finding that insurer's denial was in bad faith because the "fairly debatable determination" relies on a complex variety of facts); Fire Ins. Exch., 370 P.3d at 569 (examining the "fairly debatable"

determination on summary judgment); <u>Lund</u>, 494 P.3d at 1052 (same); <u>compare with</u> <u>Johnsen &</u> <u>Allphin Properties v. First Am. Title Ins. Co.</u>, No. 2:12-CV-740-RJS, 2013 WL 6230344, at *9 (D. Utah Dec. 2, 2013) (denying motion to dismiss because Plaintiff's breach of the covenant of good faith and fair dealing claim did not implicate the "fairly debatable" defense because the allegations "stemm[ed] from the allegedly unreasonable length of time Defendant took to evaluate Plaintiff's claim" and the "damaging timing" of the insurer's eventual denial).

## **<u>ORDER</u>**

The court concludes that the Utah Supreme Court would hold that the Garners' interpretation of the Policy is correct, and that, as a result, the Garners have adequately stated a claim that Cincinnati Insurance Company breached in bad faith its contractual obligations under the Policy when it denied coverage. For these reasons, the court ORDERS as follows:

1.     The Defendant's Motion to Dismiss (ECF No. 20) is DENIED.

DATED this 11th day of January, 2025.

BY THE COURT:

_____
Tena Campbell
United States District Judge