UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| THOMAS GARNER; and CAMMI GARNER,<br><br>Plaintiffs,<br><br>v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SANCTIONS (DOC. NO. 55)**<br><br>Case No. 2:24-cv-00378<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Daphne A. Oberg |

Thomas and Cammi Garner initiated this action after Cincinnati Insurance Company denied their insurance claim for injuries sustained in a car accident.[1] Arguing Cincinnati violated a scheduling order and engaged in "repeated discovery abuses," the Garners move for sanctions.[2] Specifically, they contend Cincinnati's conduct prohibited their ability to take "depositions of key witnesses and engage in crucial discovery" before the discovery period closed.[3] Accordingly, the Garners seek an order striking Cincinnati's answer or defense, or in the alternative, denying Cincinnati's pending motion for summary judgment or giving an adverse inference instruction. Cincinnati

---

[1] (Compl., Doc. No. 1; Am. Compl. ¶¶ 7–17, 26–29, Doc. No. 17.)

[2] (Pls.' Mot. for Sanctions (Mot.), Doc. No. 55.)

[3] (*Id.* at 2.)

opposes, arguing the motion is legally and factually baseless.[4]  Because the severe sanctions the Garners request are unjustified, the motion is denied.

BACKGROUND[5]

The Garners initiated this action in April 2024.[6]  Between July and September 2024, the parties briefed Cincinnati's motion to dismiss.[7]  During that time, the court issued an initial scheduling order, requiring the parties serve initial disclosures by August 15, 2024.[8]  The Garners served their disclosures by the deadline.[9]  Cincinnati did not.

More than five months later, on February 4, 2025, the Garners served their first set of discovery requests.[10]  One week afterward, they contacted Cincinnati to schedule depositions for its corporate witness and for Robert Poppleton—the adjuster who investigated the Garners' insurance claim, discussed it with counsel, and signed and

---

[4] (Def.'s Opp'n to Mot. (Opp'n), Doc. No. 59.)

[5] The briefing and exhibits do not have uniform page numbering.  This order refers to internal page numbers where documents or exhibits contain them but refers to CM/ECF pagination where they are lacking.  And when citing to the fact sections of the briefs, the order refers to numbered paragraphs.

[6] (Compl., Doc. No. 1; Am. Compl. ¶¶ 7–17, 26–29, Doc. No. 17.)

[7] (Doc. Nos. 20, 26, & 30.)

[8] (Scheduling Order, Doc. No. 24.)  Although Cincinnati reserved the right to file a motion to stay discovery pending resolution of its motion to dismiss, it never did.  (*Id.* at 2 n.1.)

[9] (Ex. A to Opp'n, Doc. No. 59-1.)

[10] (Ex. B to Opp'n, Doc. No. 59-2.)

sent counsel the coverage determination.[11]  Cincinnati served its initial disclosures the next day, identifying Mr. Poppleton and other individuals as representatives of Cincinnati.[12]  And on February 21, Cincinnati responded to the Garners' request for depositions for Mr. Poppleton and its corporate witness, providing fourteen dates of availability in March and early April.[13]

Thereafter, the parties coordinated discovery.  The parties agreed to extend the fact discovery deadline to April 17, 2025, and granted each other extensions for written discovery response deadlines.[14]  Cincinnati served its written responses on March 18, stating it would produce documents on April 1, as the requests did not otherwise specify a reasonable time, place, and manner for the production.[15]

On March 27, the Garners responded to Cincinnati's email regarding deposition dates and asked for additional dates and additional deponents.[16]  Cincinnati responded

---

[11] (Ex. R to Mot. 9, Doc. No. 55-18; Ex. C to Opp'n, Doc. No. 59-3 at 4; Mot. ¶ 23, Doc. No. 55 (citing Exs. G, H, & Q to Mot., Doc. Nos. 55-7, 55-8, & 55-17).)

[12] (Ex. P to Mot. 2, Doc. No. 55-16 (Cincinnati's initial disclosures dated February 13, 2025); Ex. D to Opp'n 2, Doc. No. 59-4 (same).)

[13] (Ex. R to Mot. 9, Doc. No. 55-18.)

[14] (Ex. U to Mot., Doc. No. 55-21; Exs. F & G to Opp'n, Doc. Nos. 59-6 at 2 & 59-7 at 2; Am. Scheduling Order, Doc. No. 35; Opp'n ¶ 20, Doc. No. 59.)

[15] (Ex. U to Mot., Doc. No. 55-21; Exs. F & H to Opp'n, Doc. Nos. 59-6 at 2 & 59-8.) Cincinnati produced documents as promised.  (Ex. W to Mot., Doc. No. 55-23.)

[16] (Ex. R to Mot. 8, Doc. No. 55-18.)  The Garners requested deposition dates for Cincinnati's corporate designee, Mr. Poppleton, Mason Hill, and Jeremy John.  (*Id.* at 7.)  According to Cincinnati, Mr. Hill oversaw all coverage opinions, as Mr. Poppleton's direct supervisor.  (Opp'n ¶ 13, Doc. No. 59.)  However, the Garners' motion centers on Cincinnati's actions regarding Mr. Poppleton's deposition.

that same day, asking for a notice with deposition topics for its corporate designee and stating it would ask Mr. Poppleton for available dates.[17] The Garners served the deposition notice for Cincinnati's corporate witness the following day.[18]

On March 31, Cincinnati asked the Garners to propose dates for the "other depositions" and indicated they would stipulate to extend the fact discovery deadline to complete the depositions.[19] The Garners said they could not "agree to extend discovery again."[20] Cincinnati then indicated it was still checking availability for Mr. Poppleton and asked if the Garners would at least agree to allow fact witness depositions to occur after the discovery cut-off.[21] The Garners again declined: "We can't agree to depos[itions] after the fact discovery deadline."[22]

Cincinnati responded the following day, April 2, indicating it could likely make the depositions work without extending the cut-off but noting it was still trying to schedule Mr. Poppleton.[23] Later that day, Cincinnati informed the Garners that counsel had been unable to reach Mr. Poppleton and believed he no longer worked for Cincinnati, but

---

[17] (Ex. R to Mot. 8, Doc. No. 55-18.)

[18] (Ex. J to Opp'n, Doc. No. 59-10.)

[19] (Ex. R to Mot. 5, Doc. No. 55-18.)

[20] (*Id.*)

[21] (*Id.* at 4.)

[22] (*Id.* at 3.)

[23] (*Id.*)

counsel would continue to attempt contact.[24]  Five days later, Cincinnati informed the Garners that Mr. Poppleton had resigned in March and no longer worked for the company, "so that [they] could attempt to subpoena him for the deposition."[25]  Counsel explained Mr. Poppleton had not responded to attempts to contact him, and provided Mr. Poppleton's address (a P.O. Box in Logan, Utah) should the Garners wish to subpoena him directly.[26]

On April 15, the Garners emailed Cincinnati's counsel a copy of a deposition subpoena they tried to serve on Mr. Poppleton.[27]  Cincinnati's counsel responded the next day, explaining he had spoken with Mr. Poppleton.[28]  He relayed that Mr. Poppleton indicated he never received a subpoena, he did not live at the address on the subpoena, and he believed he had no obligation to appear for the April 17 deposition.[29]  Cincinnati's counsel explained he had no address for Mr. Poppleton.  He only had a P.O. Box (which he already shared) and he was not authorized to share Mr. Poppleton's

---

[24] (Id. at 1.)

[25] (Ex. L to Opp'n, Doc. No. 59-12.)

[26] (Id.)

[27] (Ex. X to Mot. 3, Doc. No. 55-24.)  Mr. Poppleton's deposition was set for April 17, the day fact discovery closed, but the Garners do not attach any deposition subpoena to their motion.  (Id. at 2.)  From the parties' email exchange, it appears the Garners sent Cincinnati a copy of a subpoena they served at an address they believed to be Mr. Poppleton's.  (See id. at 1–2.)

[28] (Id. at 2.)

[29] (Id.)

phone number.[30]  The April 17 deposition did not occur.  That day, Cincinnati supplemented its initial disclosures, removing Mr. Poppleton as a potential witness—since the company does not intend to rely on him for trial where he disclaimed any memory of the Garners' claim.[31]

More than two months later, the Garners filed the present motion, seeking sanctions pursuant to Rules 16 and 37 of the Federal Rules of Civil Procedure.[32]

## DISCUSSION

The Garners contend Cincinnati's "dilatory and abusive tactics" in discovery caused prejudice by impairing their ability to conduct discovery.[33]  They make two distinct arguments in support of their request that the court strike Cincinnati's answer or defense, or deny its motion for summary judgment or give an adverse inference instruction as to Mr. Poppleton's testimony.  First, the Garners argue Rule 16(f)(1)(C) and Rule 37(b)(2)(A) justify such sanctions, because Cincinnati failed to comply with the scheduling order by serving initial disclosures late and engaging in other discovery

---

[30] (*Id.* at 1.)

[31] (Opp'n ¶ 42, Doc. No. 59.)  The Garners do not dispute this fact.

[32] (Mot., Doc. No. 55.)  In their reply, the Garners cite *Sender v. Mann*, 225 F.R.D. 645, 656–57 (D. Colo. 2004).  (*See* Pls.' Reply Mem. in Supp. of Mot. (Reply), Doc. No. 63 at 4.)  In *Sender*, the court discussed whether to impose sanctions under Rule 37(c)(1) for a party's failure to make initial disclosures under Rule 26(a).  *See* 225 F.R.D. at 656–57.  But the Garners do not argue for sanctions under Rule 37(c).  They explicitly move for sanctions under Rules 16(f)(1)(C), 37(b)(2)(A), and 37(d).  (Mot., Doc. No. 55 at 1.)

[33] (Mot., Doc. No. 55 at 7.)

misconduct.[34]  Second, the Garners contend Rule 37(d) justifies these sanctions because Cincinnati failed to produce Mr. Poppleton for his deposition after assuming responsibility for his appearance.[35]  In opposition, Cincinnati argues the motion lacks factual and legal merit.[36]  Because the conduct at issue does not justify the requested sanctions, the Garners' motion is denied.

   A. <u>Neither Rule 16(f)(1)(C) or 37(b)(2)(A) Supports the Imposition of Sanctions</u>

The Garners do not justify the imposition of sanctions under Rule 16(f)(1)(C) or Rule 37(b)(2)(A).  The Garners contend striking Cincinnati's answer or defense is justified by Cincinnati's failure to comply with the scheduling order and its other discovery misconduct.[37]  Specifically, the Garners argue Cincinnati prevented them from "discovering key facts and witnesses for 8 months" by failing to timely serve initial

---

[34] (*Id.* at 7–10.)

[35] (*Id.* at 10–12.)

[36] (Opp'n 8–11, Doc. No. 59.)  Cincinnati also contends the Garners failed to confer on any of the discovery issues raised in their motion, including the delayed initial disclosures.  (*Id.* 8, 9.)  In their reply, the Garners argue that, unlike for motions to compel under Rule 37(a), meet-and-confer requirements do not apply to motions for sanctions under Rule 16(f) or Rule 37(b).  (Reply, Doc. No. 63 at 2.)  Courts have found Rule 37(b) does not impose meet-and-confer requirements.  *See, e.g.*, *Martin v. SGT, Inc.*, No. 2:19-cv-00289, 2022 U.S. Dist. LEXIS 45646, at *12 (D. Utah Mar. 14, 2022) (unpublished) (explaining motions for sanctions under Rule 37(b) are not subject to meet-and-confer requirements like Rule 37(a) motions seeking "an order compelling disclosure or discovery").

[37] (Mot., Doc. No. 55 at 7–10.)  It is unclear whether the Garners seek the alternative sanction of an adverse inference instruction as to Mr. Poppleton's testimony under Rules 16(f)(1)(C) and 37(b)(2)(A).  They do not explain how these rules support an adverse inference.  They instead seem to rely on Rule 37(d) to argue for this alternative remedy.  (*Id.* at 7, 12.)

disclosures, serving deficient disclosures, producing no documents, and "lulling" the Garners into believing Mr. Poppleton would appear for his deposition while refusing to provide his contact information.[38] According to the Garners, Mr. Poppleton is a "key witness" who they would have subpoenaed if Cincinnati had served initial disclosures on time and provided his contact information.[39] As it stands, they ran out of time.

The Garners' arguments are uncompelling. As a threshold matter, the Garners have not shown Cincinnati should be sanctioned for deficient initial disclosures or failing to produce documents. Although the thrust of the Garners' grievance is that they were unable to depose Mr. Poppleton before the close of discovery, they also argue Cincinnati failed to identify witnesses it intends to rely on.[40] For instance, the Garners note that Mr. Poppleton contacted Litchfield Cavo (Cincinnati's coverage counsel) in February 2022.[41] Although Litchfield Cavo drafted a coverage opinion, Cincinnati "did not identify the attorneys from Litchfield Cavo as witnesses" in its initial disclosures.[42] The Garners also argue the disclosures were deficient because Cincinnati did not

---

[38] (*Id.* at 7–9.)

[39] (*Id.* at 9.)

[40] (*Id.* at 8.)

[41] (*Id.* ¶ 7.)

[42] (*Id.* ¶¶ 11, 26 (citing Exs. F, I, & P to Mot., Doc. No. 55-16).) To the extent the Garners seek an evidentiary ruling excluding specific witnesses or evidence from trial based on nondisclosure, the request is premature, and they have not adequately briefed it. In addition, the evidentiary sanctions available for nondisclosure under Rule 37(c) "are often described as 'self executing' or 'automatic.'" *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 931 (D. Colo. 2017).

"produce the full claims log and coverage opinion" it relies on for its defense that coverage was "fairly debatable."[43] But the Garners cite no authority supporting their one-paragraph argument that Cincinnati's initial disclosures were substantively deficient. Nor do they cite any authority holding documents must be produced with initial disclosures.[44] And they never challenged any deficient or delayed document production during the discovery period.[45] Accordingly, they have not justified Rule 37(b) sanctions on these grounds.

    Cincinnati's late disclosures and conduct around Mr. Poppleton's deposition likewise fail to justify the severe sanctions requested. Under Rule 16(f)(1)(C), "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a

---

[43] (Mot., Doc. No. 55 at 8.)

[44] Rule 26 requires a party to provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses," without waiting for a discovery request. Fed. R. Civ. P. 26(a)(1)(A)(ii). But "[w]hile Rule 26(a) requires a party to identify and describe supporting witnesses and documents, it does not require the party to produce them." *Adkins v. TFI Family Servs.*, No. 13-CV-2579, 2017 U.S. Dist. LEXIS 96344, at *24 (D. Kan. June 22, 2017) (unpublished) (emphasis omitted).

[45] The Garners did not serve their discovery requests until February 4, 2025. (Ex. B to Opp'n, Doc. No. 59-2.) The parties apparently agreed Cincinnati would serve its responses by March 18—which it did. (Ex. U to Mot., Doc. No. 55-21 at 1; Ex. H to Opp'n, Doc. No. 59-8.) And where the Garners did not specify a time, place, or manner for Cincinnati's production, Cincinnati informed the Garners it would produce the documents by April 1—and it did. (Ex. U to Mot., Doc. No. 55-21 at 1; Ex. W to Mot., Doc. No. 55-23.) This timing undermines the Garners' suggestion that the production was unduly delayed.

party or its attorney . . . fails to obey a scheduling or other pretrial order."[46] And under Rule 37(b)(2)(A), if a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court . . . may issue further just orders."[47] This includes orders "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" or "striking pleadings."[48]

Before imposing severe sanctions[49] for failure to obey a discovery order, courts consider several factors, generally known as the *Ehrenhaus* factors.[50] These include: "(1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the

---

[46] Fed. R. Civ. P. 16(f)(1)(C).

[47] Fed. R. Civ. P. 37(b)(2)(A).

[48] Fed. R. Civ. P. 37(b)(2)(A)(ii)–(iii).

[49] Severe sanctions include those with the same force and effect as dismissal, such as striking a party's answer or defense. *See Brigham Young Univ. v. Pfizer, Inc.*, 282 F.R.D. 566, 569–70 (D. Utah 2012) (discussing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992) and explain that, "[i]n general, before imposing severe sanctions such as striking a parties' answer or dismissing a case, courts should consider the *Ehrenhaus* factors."); *see also Shanley v. Hutchings*, No. 2:22-cv-00549, 2023 WL 4764007, at *5 (D. Utah July 26, 2023) (unpublished) (applying *Ehrenhaus* factors and considering sanction of striking affirmative defenses). Although the Garners appear to seek an adverse inference instruction under Rule 37(d), courts have considered the *Ehrenhaus* factors on motions for an adverse inference instruction under Rule 37(b)(2)(A) and imposed this sanction against a party for acting in bad faith and disobeying prior discovery orders that warned of the sanction. *See, e.g., Boxer F2, L.P. v. Flamingo West, Ltd.*, at *2 (D. Utah May 4, 2015) (unpublished), *aff'd sub nom. Boxer F2, L.P. v. Bronchick*, 722 F. App'x 791, 797 (10th Cir. 2018) (unpublished).

[50] *See HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017) (discussing *Ehrenhaus* factors).

party in advance that dismissal of the action would be a likely sanction for its noncompliance; and (5) the efficacy of lesser sanctions."[51] These factors are not exhaustive, nor are they necessarily of equal weight.[52]

Striking Cincinnati's answer or defense is not justified under Rule 16(f)(1)(C) or 37(b)(2)(A). To start, Rule 37(b)(2)(A) permits sanctions "where a party fails to comply with a *discovery* order."[53] But Cincinnati has not violated any discovery orders. No discovery orders were issued—because neither party raised any discovery disputes. There is no question Cincinnati violated the scheduling order by serving late initial disclosures. But there has been no specific "order to provide or permit discovery"—let alone an order Cincinnati disobeyed.[54]

---

[51] *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (citation modified).

[52] *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005); *see also Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) ("The *Ehrenhaus* factors are simply a non-exclusive list of sometimes-helpful 'criteria' or guide posts the district court may wish to 'consider' in the exercise of what must always remain a discretionary function.").

[53] *Klein-Becker USA, LLC v. Collagen Corp.*, No. 2:07-CV-873, 2008 U.S. Dist. LEXIS 85475, at *4 (D. Utah Oct. 22, 2008) (unpublished) (emphasis added); *see also HCG Platinum*, 873 F.3d at 1203 (explaining courts can sanction a party under Rule 37(b)(2) for failing "to obey an order to provide or permit *discovery*" (emphasis added)); *Ehrenhaus*, 965 F.2d at 920 (explaining a court's discretion to impose sanctions under Rule 37(b)(2) "is limited in that the chosen sanction must be both just and related to the particular claim which was at issue in the *order to provide discovery*" (citation modified)).

[54] *See HCG Platinum*, 873 F.3d at 1203; *Ehrenhaus*, 965 F.2d at 920.

To be sure, Rule 16 allows courts to address violations of scheduling orders, including by issuing orders authorized by Rule 37(b)(2)(A)(ii)–(vii).[55] But the Garners provide no authority supporting the imposition of such severe sanctions solely because a party violates a scheduling order. While the Garners cite multiple cases, in all but one, the court sanctioned a party who violated multiple prior court orders, including discovery orders (or who refused to engage in discovery entirely). In the sole outlier, *Hathcock v. Navistar International Transportation Corporation*,[56] the Fourth Circuit found the district court abused its discretion by imposing a default sanction. While the court concluded a default sanction can be an appropriate response to the violation of a scheduling order, it found the district court erroneously imposed the sanction without warning the offending party, assessing prejudice to the moving party, and considering lesser sanctions.[57] Consistent with this concept overall, each court in the other cases only imposed (or affirmed the imposition of) sanctions after the court warned of the

---

[55] Fed. R. Civ. P. 16(f)(1)(C).

[56] 53 F.3d 36 (4th Cir. 1995).

[57] *Id.* at 40–41; *cf. Blackburn v. Webb*, No. 24-6206, 2025 U.S. App. LEXIS 11078, at *3–5 (10th Cir. 2025) (unpublished) (holding the district court did not err in applying the *Ehrenhaus* factors in granting a motion for sanctions made under Rules 16(f)(1)(C), 37(b)(2)(A), and 41(b) where a party failed "to participate in discovery" or to comply with the federal rules, and had been warned "that further procedural failures could result in harsh sanctions"); *Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 139–40 (10th Cir. 1994) (holding the district court appropriately sanctioned a party under Rules 16(f) and 37(b)(2)(A) by preventing him from presenting witnesses, exhibits, testimony, or evidence at trial, because the party had entirely failed to respond to any discovery requests, failed to attend his deposition despite a court order, and did not comply with an order to provide witness and exhibit lists).

possible consequences of continued noncompliance.[58]  The same is not true here.  This is the first discovery-related dispute raised in the case, and Cincinnati has never been warned of the consequences of noncompliance.  In other words, none of the cases the Garners cite support the imposition of the sanctions they seek.

In addition, the *Ehrenhaus* factors largely weigh against striking Cincinnati's answer.  First, the degree of prejudice from not deposing Mr. Poppleton is equivocal.  The Garners claim Mr. Poppleton (the adjuster who investigated and denied their insurance claim) is a key witness.  But Cincinnati removed Mr. Poppleton as a witness in its supplemental disclosures because the company does not intend to rely on him for trial, given his lack of memory of the Garners' claim.[59]  Moreover, despite knowing of

---

[58] *See, e.g.*, *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011) (affirming sanctions striking answer and entering default where the defendants failed to comply with a discovery order, failed to meet and confer, and provided initial disclosures just before motions in limine); *Martin*, 2022 U.S. Dist. LEXIS 45646, at *17–21 (upholding Rule 37(b)(2) sanctions for disobeying a prior discovery order directing the defendant to complete document production by a certain date); *Spectator Blankets II, LLC v. McKeon*, No. 2:08-CV-919, 2010 U.S. Dist. LEXIS 32242, at *3–4 (D. Utah Apr. 1, 2010) (unpublished) (granting "terminating sanctions" where the defendant failed to comply with an order to hire counsel and failed to comply with the scheduling order—and despite two orders warning of severe sanctions, the defendant prohibited the plaintiff's ability to conduct discovery by refusing to be part of the litigation entirely); *Klein-Becker*, 2008 U.S. Dist. LEXIS 85475, at *4–5 (entering default judgment against the defendants for "continually and repeatedly" disobeying discovery obligations and multiple court orders, including orders compelling document production, orders to show cause, and an order to pay monetary sanctions); *Oak Valley Invs., L.P. v. Southwick*, No. 2:06-CV-737, 2007 WL 3333248, at *1 (D. Utah Nov. 8, 2007) (unpublished) (striking answer because the defendants failed to comply with three discovery orders granting motions to compel, ordering them to supplement discovery responses, and warning that failure to do so could result in severe sanctions).

[59] (Opp'n ¶ 42, Doc. No. 59.)  The Garners do not dispute this fact.

Mr. Poppleton's role since at least 2022, the Garners did not begin to seek discovery until two months before the discovery period closed.  They rejected Cincinnati's multiple offers to extend the fact discovery cut-off, even though the extensions would have permitted time for depositions.  And they never raised any discovery disputes or challenged Cincinnati's disclosures until filing this motion—nearly three months after the close of fact discovery.  Even if the Garners' inability to depose Mr. Poppleton and other witnesses caused prejudice, the Garners bear some (if not equal) responsibility for this predicament.

The remaining factors all weigh against sanctions.  Cincinnati's culpability and the amount of interference with the judicial process (the second and third *Ehrenhaus* factors) are minimal.  Although Cincinnati missed its initial disclosure deadline by more than five months, the Garners did not raise this with the court until now.  And the Garners themselves did not serve their first set of discovery requests until February 2025.  Likewise, during the discovery period, the Garners chose not to challenge any of the "discovery abuses" they now allege.  There is no interference with the judicial process where the parties never sought judicial intervention.[60]  Under the fourth *Ehrenhaus* factor, because the court never addressed claims of noncompliance in this case, it never warned Cincinnati of any potential sanctions for continued

---

[60] *Cf. Burgi v. Awolf Fitness*, No. 2:19-cv-00151, 2021 U.S. Dist. LEXIS 35993, at *11 (D. Utah Feb. 25, 2021) (unpublished) (noting a party "interferes with the judicial process when it fails to abide by discovery orders").

noncompliance. And under the fifth factor, the Garners have not shown lesser sanctions would be ineffective. They rely entirely on the first three factors.[61]

Even setting aside the *Ehrenhaus* factors, it would be unfair to impose the severe sanctions the Garners seek—where they chose to first raise these issues months after the fact discovery period closed. When discovery challenges are timely raised, the court can guide the parties' conduct and give any noncompliant party the opportunity to defend its conduct or correct course. Cataloging discovery offenses without raising them (until it's too late to mitigate any damage) undermines the discovery dispute process. It does not justify sanctions.

In sum, the Garners have not shown sanctions are warranted under Rule 16(f)(1)(C) or Rule 37(b)(2)(A). Although Cincinnati missed the initial disclosures deadline, the Garners waited until now to raise the issue. And the Garners did not file any motions challenging any other discovery misconduct. Where Cincinnati has violated no prior discovery orders and the Garners waited until two months before the cut-off to seek discovery from a potential witness they have known of for years, sanctions are not merited.

B. <u>Rule 37(d) Does Not Support the Imposition of Sanctions</u>

The Garners also seek sanctions under Rule 37(d), but this request is similarly unjustified. Specifically, the Garners seek an order striking Cincinnati's answer or defense, and denying its pending motion for summary judgment or giving an adverse

---

[61] (*See* Mot., Doc. No. 55 at 8 (specifically referencing only the prejudice, interference with the judicial process, and culpability factors).)

inference instruction as to Mr. Poppleton's testimony.[62]  They contend such sanctions are justified where Mr. Poppleton was the primary claims adjuster and Cincinnati interfered with the Garners' ability to depose him.  Specifically, the Garners complain Cincinnati disclosed him eight months late, refused to provide his contact information, and failed to produce him for his deposition after assuming responsibility for his attendance.[63]

Under Rule 37(d), a court "may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition."[64]  The sanctions available under Rule 37(d) "include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)."[65]  It is not necessary for a party to violate a court order for Rule 37(d) to apply, "[i]t is enough that a notice of the taking of a deposition . . . has been properly served on the party."[66]  Where Rule 37(d) applies, courts use the *Ehrenhaus* factors to assess sanctions for a party's failure to attend a properly noticed deposition.[67]

---

[62] (*Id.* at 12.)

[63] (*Id.* at 10–12.)

[64] Fed. R. Civ. P. 37(d)(1)(A)(i).

[65] Fed. R. Civ. P. 37(d)(3).

[66] 8B *Wright & Miller's Federal Practice & Procedure* § 2291 (3d ed. 2025); *see also Patton v. Sparks*, No. 23-3096, 2024 U.S. Dist. LEXIS 8420, at *16 (D. Kan. Jan. 17, 2024) (unpublished) ("Unlike Rule 37(b)(2), Rule 37(d) does not require a court order as a prerequisite for sanctions.").

[67] *See, e.g., Patton*, 2024 U.S. Dist. LEXIS 8420, at *18–25.

Sanctions are unjustified under Rule 37(d) because the rule does not apply and the *Ehrenhaus* factors weigh against imposing sanctions. First and foremost, the Garners have not shown Rule 37(d) applies here. Rule 37(d) calls for sanctions if a party or a party's officer, director, or managing agent fails to appear for a deposition after proper notice. But Mr. Poppleton is not Cincinnati's corporate designee—or its officer, director, or managing agent. Relying on *PrecisionFlow Technologies, Inc. v. CVD Equipment Corporation*,[68] the Garners contend Rule 37(d)(1)(A)(i) applies "even when the party's employee is not an officer, director, or managing agent, when a party assumes responsibility for the attendance of one of their employees as a witness at a deposition."[69] But in *PrecisionFlow*, the Northern District of New York found the party employed the deponents at the time they failed to appear, and the deponents had actively worked with the party's counsel to prepare for the depositions.[70] In contrast, Mr. Poppleton resigned in March, was no longer Cincinnati's employee, and never worked with Cincinnati's counsel to prepare for the deposition. Indeed, he did not respond to counsel's attempts to contact him until just before the deposition. The Garners' assertion that Rule 37(d) applies to Mr. Poppleton—a nonparty who was not an employee of Cincinnati at the time of the scheduled deposition—is uncompelling and unsupported.

---

[68] 198 F.R.D. 33 (N.D.N.Y. 2000).

[69] (Mot., Doc. No. 55 at 11.)

[70] *PrecisionFlow*, 198 F.R.D. at 34–35.

17

Second, even assuming Rule 37(d) applied here, the *Ehrenhaus* factors do not support sanctions against Cincinnati for Mr. Poppleton's failure to appear at the April 17 deposition. While the Garners claim Cincinnati assumed responsibility for his attendance, as of April 2, counsel warned the Garners he could not reach Mr. Poppleton and believed Mr. Poppleton no longer worked for Cincinnati.[71] And as of April 7, counsel affirmatively advised the Garners they would need to subpoena Mr. Poppleton directly, as he had resigned from the company and could not be reached.[72] In other words, at least as of April 7, Cincinnati no longer assumed responsibility for his attendance. And, again, the Garners did not raise this issue during the discovery period—when it could have been remedied. Accordingly, even if the Garners suffered prejudice and even if Cincinnati bears some culpability for delayed notice that the Garners needed to subpoena Mr. Poppleton directly, its interference with the judicial process is minimal. In addition, the court never warned Cincinnati of potential sanctions for failure to produce Mr. Poppleton for a deposition. And the Garners have not shown lesser sanctions would be ineffective. For all these reasons, the sanctions requested are not justified under Rule 37(d).

---

[71] (Ex. R to Mot. 1, Doc. No. 55-18.)

[72] (Ex. L to Opp'n, Doc. No. 59-12.)

## CONCLUSION

The Garners' motion[73] for sanctions is denied. The Garners have not shown the requested sanctions—striking Cincinnati's answer or defense, denying its motion for summary judgment, or giving an adverse inference instruction to the jury—are justified. This is particularly true where Cincinnati did not violate any discovery orders, the court never warned Cincinnati of possible sanctions for noncompliance, and the Garners did not show Rule 37(d) applies.

DATED this 4th day of November, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[73] (Doc. No. 55.)